# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **CHASE KINDER and CHERI KINDER,** individually and d/b/a as Bird Dog Hill Kennels, individually and on behalf of others similarly situated; **STONYBROOK KENNEL**, individually and on behalf of others similarly situated; **PAMELA TAAS**, individually and on behalf of others similarly situated, | ) ) ) ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) |
| v. | ) ) ) |
| **NORFOLK SOUTHERN CORPORATION** and **NORFOLK SOUTHERN RAILWAY COMPANY**, | ) ) ) ) |
| Defendants. | ) |

CASE NO.: _____

NOTICE OF REMOVAL

**JURY TRIAL DEMANDED**

Electronically Filed

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, defendants Norfolk Southern Corporation (hereinafter "NSC") and Norfolk Southern Railway Company (hereinafter "NSRC") (collectively, "Defendants") hereby remove this action to the United States District Court for the Northern District of Ohio from the Court of Common Pleas of Columbiana County, Ohio, where this action is now pending. In support of this Notice of Removal, Defendants set forth the following grounds:

1. This is a civil action over which this Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which a member of the purported class of plaintiffs is a citizen of a state different from that of any defendant.

2. On or about February 9, 2023, Plaintiffs Chase Kinder, Cheri Kinder, Bird Dog Hill Kennels, Stonybrook Kennel, and Pamela Taas ("Plaintiffs"), residents of Ohio, filed a putative Class Action Complaint (hereinafter "Complaint") in the Court of Common Pleas of Columbiana County, Ohio captioned: *Chase Kinder and Cheri Kinder, individually and d/b/a Bird Dog Hill Kennels, individually and on behalf of others similarly situated, Stonybrook Kennel, individually and on behalf of others similarly situated, and Pamela Taas, individually and on behalf of others similarly situated, v. Norfolk Southern Corporation and Norfolk Southern Railway Company*, at Docket No. 2023 CV 00058.

3. Attached hereto as Exhibit "A" is a true and correct copy of the Complaint filed in the Court of Common Pleas of Columbiana County, Ohio. As of February 15, 2023, Defendants have not been served with a Summons and Complaint, and there are no additional pleadings or orders that have been filed in the Court of Common Pleas of Columbiana County, Ohio.

4. The Complaint is brought on behalf of Plaintiffs and three putative subclasses:

(A) "[a]ll persons, firms or entities who owned or rented property at any time from February 3 through February 17, 2023 within 20 miles of the train derailment that occurred on February 3, 2023 at the East End of East Palestine (APPROX. 40°50'09.6"N 80°31'21.7"W)";

(B) "[a]ll persons who owned, rented, resided in, or worked at a property at any time from February 3 through February 17, 2023 within 20 miles of the train derailment that occurred on February 3, 2023 at the East End of East Palestine (APPROX. 40°50'09.6"N 80°31'21.7"W) and who evacuated the area, were sheltered in place, or were unable to return to their homes or businesses pursuant to direction of safety personnel," and;

(C) "[a]ll persons present within 20 miles of the train derailment that occurred on February 3, 2023 at the East End of East Palestine (APPROX. 40°50'09.6"N 80°31'21.7"W)." (Ex. "A" at ¶ 1).[1]

---

[1] For purposes of this Notice, Defendants will refer to the train derailment in East Palestine, Ohio on February 3, 2023 as "the February 3 derailment."

2

5. The Complaint asserts claims for negligence, "res ipsa," nuisance, reckless or willful and wanton conduct and ultra hazardous activity, punitive damages, attorneys' fees, and seeks injunctive relief.

6. The Complaint alleges that "[e]ach of these classes number in excess of 500 persons and each is so numerous that joinder of all members is impracticable, and it is further impractical to bring all such persons before this Court." (Ex. "A" at ¶ 2). Accordingly, there is no dispute there are more than 100 members in each of the proposed plaintiff classes.

7. This Court has original jurisdiction over this case pursuant to CAFA. Specifically, at least one member of the class of plaintiffs is a citizen of a state different from any defendant:

   a. Each of the named Plaintiffs reside in Ohio (Ex. "A" at ¶¶ 13-15), and upon information and belief, each is a citizen of the State of Ohio; and

   b. Defendants NSC and NSRC both are corporations organized and existing under the laws of the Commonwealth of Virginia, with their principal place of business in Georgia.

8. The February 3 derailment is the subject of numerous class action civil lawsuits pending—and originally filed—in this Court, each of which have alleged an amount in controversy in excess of $5,000,000 including:

- *Feezle, et al. v. Norfolk Southern Corporation, et al.*, No. 4:23-cv-00242-BYP;

- *Eisley, et al. v. Norfolk Southern Railway Company*, No. 4:23-cv-00250-BYP;

- *Hall, et al. v. Norfolk Southern Railway Co., et al.*, No. 4:23-cv-00257-JRA;

- *Erdos, et al. v. Norfolk Southern Corporation, et al.*, No. 4:23-cv-00268-BYP.

9. Although Defendants deny that they are legally liable for any of the claims or theories of recovery as alleged in the Complaint and further deny that Plaintiffs, or any members of the putative class, are legally entitled to any monetary or equitable relief as alleged in the Complaint, the amount in controversy here satisfies the jurisdictional threshold.

10. The CAFA amount-in-controversy threshold is satisfied because the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. 28 U.S.C. §§ 1332(d)(2), (6). Although the Complaint alleges that the Plaintiffs suffered various damages, it does not quantify the amount of damages in any way. (Ex. "A" at ¶ 59). "When a complaint does not specifically allege damages in detail, a removing defendant must establish the threshold is satisfied by a preponderance of the evidence." *Johnson v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 176656, at *5 (N.D. Ohio Dec. 17, 2013). "This standard does not place upon the defendant the daunting burden of proving, to a legal certainty, that the plaintiff's damages are not less than the amount-in-controversy requirement." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (citation omitted).

11. As demonstrated by the conservative estimates below, it is clear, by a preponderance of the evidence, that the amount of controversy in this class action, with a putative class of potentially thousands of individuals and businesses, exceeds $5,000,000.

## TYPES OF DAMAGES SOUGHT

12. The Complaint sets forth three classes of potential plaintiffs, and delineates the alleged harm to each as follows: "the class members in Class A have experienced property damage and expense, all to their damage. The members of Class B have experienced economic loss and expense, emotional distress, discomfort and inconvenience, all to their

4

damage. The members of Class C have experienced exposure to hazardous chemicals which create a risk of harm justifying testing, monitoring, and other relief, and those persons have likewise experienced other losses and expenses." (Ex. "A" at ¶ 39).

13. In Counts One, Two, and Four of the Complaint (negligence, res ipsa, and reckless or willful and wanton conduct and ultra hazardous activity), the Plaintiffs request damages for all class members as follows:

    a. The right and necessity to have an inspector of their choice fully inspect their homes and businesses to estimate the full amount of real and/or personal property damage.

    b. The right to have all such damage repaired promptly and fully.

    c. The right to full compensation for economic and business loss and expense for the persons, firm and entities whose businesses or employment was disrupted.

    d. The right to full compensation for all medical expenses or costs.

    e. The right to medical testing, follow-up, monitoring, and related relief.

    f. The right to full compensation for per diem economic loss, costs, expenses, meals and lodging for those who evacuated, all additional incurred costs or losses for those sheltered in place, and recovery for those who otherwise incurred loss, costs or expenses of an economic nature as a result of the gas leaks.

    g. The right to full compensation for the evacuation and/or failure to return including but not limited to emotional distress, pain, discomfort and inconvenience.

(Ex. "A" at ¶¶ 42, 46, 57, and 59).

14. In Count Three of the Complaint (nuisance), Plaintiffs request damages for all members of Class A and Class B who own real property and "have experienced, for and to that property, damages as the direct and proximate result of the fire, smoke and chemicals." Plaintiffs also request the same general relief for all class members listed above for Count Three. (Ex. "A" at ¶¶ 49, 51).

15. In addition to compensatory damages, Plaintiffs seek punitive damages, interest, costs, attorneys' fees, and accountant or auditing fees for all putative class members. (Ex. "A", *ad damnum* clause, at nos. 3, 4).

16. The Complaint generally seeks compensatory damages and punitive damages for economic losses, interference with the use and enjoyment of property, residence, workplace and/or business, past and future medical expenses, emotional distress and pain, discomfort and inconvenience.

## **PUTATIVE CLASS MEMBERS**

17. Based on census data, it appears that the total number of putative class members that reside within a 20 mile radius of the February 3 derailment site includes 446,440 potential members over a three state area. (A true and correct copy of the University of Missouri Census Data Center, Geocor 2022 Geographic Correspondence Engine data for a 20 mile radius is attached hereto as Exhibit "B").

18. Based on this number of putative class members, each member need only put $11.20 of damages in controversy to satisfy the CAFA jurisdictional amount of $5,000,000. Although the claims in the Complaint contemplate potential damages in excess of $11.20 per

potential class member, a more conservative review of the currently available data also shows that the amount in controversy requirement is met here.

19. Approximately 2,000 people were evacuated as a result of the February 3 derailment. (Christine Houser, *What We Know About the Train derailment in Ohio*, New York Times, February 13, 2023, *available at* https://www.nytimes.com/article/ohio-train-derailment.html, a true and correct copy of which is attached as Exhibit "C"). All of these evacuees were East Palestine, Ohio residents.

20. In addition, all other residents of East Palestine, Ohio were subject to shelter-in-place orders on February 3, 2023. (*Fiery Train Derailment in East Palestine Leads to Evacuation Order*, Salem News, February 4, 2023, *available at* https://www.salemnews.net/news/local-news/2023/02/fiery-train-derailment-in-east-palestine-leads-to-evacuation-order/, a true and correct copy of which is attached hereto as Exhibit "D").

21. Further, residents in areas of Mahoning and Trumbull Counties were advised to shelter in place on February 6, 2023. (Stan Boney, Katelyn Amato, Jerica Rogers, C. Aileen Blaine, Noelle Haynes, *Shelter in Place, Officials Advising Valley Residents to Stay Indoors*, WKBN27 News, February 6, 2023, *available at* https://www.wkbn.com/news/local-news/east-palestine-train-derailment/shelter-in-place-officials-advising-valley-residents-stay-indoors/, a true and correct copy of which is attached hereto as Exhibit "E").

22. East Palestine, Ohio, the location of the derailment, evacuation sites, and "shelter in place" orders, has a population of approximately 4,761. (A true and correct copy of the U.S. Census Bureau, State & County QuickFacts for East Palestine is attached hereto as Exhibit "F"). Further, census data shows that the number of individuals living within two

miles of the derailment site is 5,412. (A true and correct copy of the University of Missouri Census Data Center, Geocor 2022 Geographic Correspondence Engine data for a 2 mile radius is attached hereto as Exhibit "G").

23. Data Axle (formerly ReferenceUSA) reports that East Palestine, Ohio currently has 1,230 businesses. (A true and correct copy of the Data Axle Report for East Palestine Businesses is attached hereto as Exhibit "H").

24. The population of Columbiana County, Ohio as of the April 1, 2020 census is approximately 101,877 persons. (U.S. Census Bureau, State & County QuickFacts, Columbiana County, Ohio, *available at* https://www.census.gov/quickfacts/fact/table/columbianacountyohio/PST045222, a true and correct copy of which is attached hereto as Exhibit "I").

25. Data Axle reports that Columbiana County, Ohio currently has 18,996 businesses. (A true and correct copy of the Data Axle Report for Columbiana County Businesses is attached hereto as Exhibit "J").

26. In addition and for scale, the following, nonexclusive, list of census areas with populations exceeding 5,000 are within the 20 mile radius proposed by Plaintiffs:

- Youngstown, OH (66,982)[2]
- Canfield, OH (7,699)
- Struthers, OH (10,063)
- Campbell, OH (7,852)
- Salem, OH (11,915)

---

[2] The twenty mile radius alleged by Plaintiffs does not appear to cover all of the Youngstown city area, but does reach the center of Youngstown.

- Columbiana City, OH (6,559)

- East Liverpool, OH (9,958)

- Beaver Falls, PA (9,005)

- New Castle, PA (21,926)

- Ellwood City, PA (7,642)

(U.S. Census Bureau, State & County QuickFacts for the above areas are collectively attached hereto as Exhibit "K").

### LOSS OF INCOME FOR EAST PALESTINE BUSINESSES

27. Plaintiffs seek damages for loss of income by all businesses within 20 miles of the incident site. (Ex. "A" at ¶ 59). A conservative estimate of the amount in controversy attributable to lost-income compensatory damages from just East Palestine, Ohio businesses within the Complaint's class definition is approximately $1,378,361 for a five-day period.

28. Based on the duration of the evacuation and shelter in place orders in East Palestine, Ohio the Defendants will assume for purposes of the amount in controversy analysis only that plaintiffs seek recovery of approximately five days of lost sales for each East Palestine, Ohio business. This assumption is supported by news reports that East Palestine businesses had a sales decrease during the evacuation period. (*See* Gerry Ricciutti, Megan Lee, *Businesses Work Through Challenges Following Evacuation Lift*, WKBN27 News, February 10, 2023, *available at* https://www.wkbn.com/news/local-news/east-palestine-train-derailment/businesses-residents-slowly-return-to-normal-following-evacuation-lift/, a true and correct copy of which is attached hereto as Exhibit "L").

29. To be conservative, jurisdictional amount calculations will be made only for East Palestine businesses with annual sales of less than $2.5 million. The sales of a business

9

with $2.5 million in annual sales would average $6,849 per day, and $34,246 for a five day period. Additionally, to be conservative, businesses outside of East Palestine but within Columbiana County will not be included.

30. Data Axle lists 628 businesses in East Palestine with annual sales under $2.5 million. Of these 628 businesses, 161 have verified records. To be conservative, only the verified records will be used here. (Data Axle Report for Verified records of East Palestine Businesses With Sales Under $2.5 Million, a true and correct copy of which is attached hereto as Exhibit "M").

31. Taking these estimates together, the total value for lost sales for East Palestine businesses would be approximately $1,102,689 per day and $5,513,445 for a five day period.

32. To create an even more conservative estimate, taking 25% of the total sales lost to represent lost revenue, the total minimum economic damages for lost revenue to East Palestine businesses totals $1,378,361 for a five-day period.

### **LOSS OF INCOME FOR EAST PALESTINE RESIDENTS**

33. Plaintiffs also seek compensatory damages for the income lost by individuals residing or working within 20 miles of the February 3 derailment site. (Ex. "A" at ¶¶ 1, 59). A conservative estimate of the amount in controversy attributable to lost income for just East Palestine households evacuated and subject to shelter-in-place orders is at least $1,459,430.

34. Approximately 900 homes, comprising nearly 2,000 East Palestine residents, were evacuated. The median household income in East Palestine is $40,000 for the town's households. (East Palestine Ohio Government Statistics, *available at*, http://eastpalestine-oh.gov/statistics/, a true and correct copy of which is attached hereto as Exhibit "N"). If each

home contained only one household, and each of those households lost a week's wages ($769.23), this group of persons would claim to have lost $692,307 in wages.

35. All other residents of East Palestine were subject to shelter-in-place orders on February 3, 2023 (*See* Ex. "D"). Subtracting those in the evacuation area, this leaves approximately 1,000 households affected by the shelter-in-place orders. Given the mean household income in East Palestine, seven days of claimed lost income for just these households is $767,123.29 in lost wages ($40,000 divided by 365 (average daily wage) multiplied by 1,000 households multiplied by seven days). This figure does not include residents of other municipalities within 20 miles of the derailment site who were advised to shelter in place, such as those in Mahoning and Trumbull Counties. (*See* Ex. "E").

**LOSS OF USE AND ANNOYANCE DAMAGES FOR EAST PALESTINE RESIDENTS**

36. Plaintiffs also seek compensatory damages under a theory of nuisance for "damages as the direct and proximate result of the fire, smoke, and chemicals," (Ex. "A" at ¶ 49), and under both nuisance and other claims for all other losses related to the evacuation order and/or failure to return, including "discomfort and inconvenience." (Ex. "A" at ¶ 59). Ohio follows the Restatement (Second) of Torts § 929 in assessing damages to land. *See Parker v. Hegler,* 2008-Ohio-3739, ¶ 14 (11th Dist. Ct. App. 2008). Section 929 in principle provides compensation for diminution of residential property value, loss of use, and discomfort and annoyance. A conservative estimate of the amount in controversy for these claims exceeds $228,666.

37. As described above, approximately 900 households were evacuated for around a week's time. For the loss of use of their residences, these evacuees could claim to be entitled to at least the residences' rental value for the period of the evacuation. *See*

RESTATEMENT § 931 cmt. b. The median monthly gross rent in Columbia County is $641, which equates to a weekly rent of approximately $147.51. (*See* Ex. "I"). This equates to loss of use damages of $132,766.

38. In addition, prevailing nuisance plaintiffs may seek damages for restoration as well as "discomfort and annoyance" from the nuisance. These damages include effects on the senses, such as "noxious gases, or disagreeable odors" which are alleged to cause physical discomfort to a plaintiff. *Banford v. Aldrich Chem. Co.*, 2010-Ohio-2470, ¶ 26, 126 Ohio St. 3d 210, 215, 932 N.E.2d 313, 318. (collecting cases). Persons from areas beyond the evacuation area are alleged to have reported a strong smell as of February 7, 2023. (*See* Ex. "E").

39. In *Bullock v. Oles*, 2001-Ohio-3220 (7th Dist. Ct. App.) the appellate court affirmed a bench trial verdict of $10,000 for a nuisance claim related to sewage discharged from an adjoining property which existed for two years even though it did not result in the plaintiffs being forced from their homes. This resulted in an award for approximately $13.70 per day for discomfort and annoyance. Taking this number as a benchmark example for purposes of the amount in controversy analysis, it is reasonable to assume an amount in controversy of at least $95,900 for discomfort and annoyance ($13.70 times 7 days, multiplied by the number of households 1,000).

## PUNITIVE DAMAGES

40. Plaintiffs also request an award of punitive damages related to the February 3 derailment. (Ex. "A" at ¶ 9, no. 3). "When determining the jurisdictional amount in controversy in diversity cases, punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (quoting *Holley Equip Corp. v. Credit Alliance Corp.,* 821 F.2d

1531, 1535 (11th Cir. 1987)). Ohio law allows for the recovery of punitive damages in tort actions in which the plaintiff proves actual damages and the defendant's actions or omissions demonstrate malice, but caps such damages at two times the amount of compensatory damages. Ohio Rev. Code § 2315.21(C), (D).

41. Plaintiffs' Complaint alleges that Defendants' actions were reckless or willful and wanton, and constituted a "conscience disregard of a known risk having a substantial likelihood of causing serious harm." (Ex. "A" at ¶¶ 53-56). While this is denied, based on Ohio law, punitive damages are technically an available remedy to seek in tort actions – meaning there is no "legal certainty" that punitive damages cannot be recovered in this case. *See, e.g.*, *Allison v. ExxonMobil Corp.*, No. C-07-003809, 2011 Jury Verdicts LEXIS 203517 (Md. Cir. Ct. Balt. Cty. June 30, 2011) (jury awarded $1,045,290,000 in punitive damages and $496,840,570 in compensatory damages where gasoline tank had leaked and contaminated water; plaintiffs alleged trespass and fraudulent misrepresentation and claimed tanks had propensity to leak); *Caudill v. E.I. Dupont*, No. 0:04- 229, 2010 KY Trial Ct. Rev. LEXIS 88 (D. Ky. Feb. 18, 2010) (court applied a previous jury's 10:1 multiplier for punitive damages resulting from sulfuric mist release that caused respiratory and emotional injuries, where there was evidence of corrosion in piping).

42. Application of a 2:1 ratio of punitive to compensatory damages to the above estimates would yield $6,132,914 in punitive damages ($1,378,361 for loss of revenue plus $1,459,430 for loss of income for residents plus $228,666 for loss of use and for annoyance, yields $3,066,457 in compensatory damages, then multiplied by 2). This brings the total amount in controversy to $9,199,371.

43. Even if a jury were to award an equal amount in punitive and compensatory damages, the amount in controversy would still be $6,132,914, well over the CAFA jurisdictional limit.

## DAMAGES NOT CONSIDERED

44. None of the above estimates include the potential claims of any person or business outside of East Palestine, Ohio even though the subclasses include all individuals residing within 20 miles of the February 3 derailment site. As noted above, census data suggests that the total number of potential class members residing in that 20 mile radius exceeds 446,000.

45. Plaintiffs also seek an award for medical monitoring costs to each class member. Although at this time Defendants do not have an estimate for the medical monitoring costs requested by plaintiffs, such costs are undoubtedly to be considered in calculating an amount in controversy. *See Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 571 (6th Cir. 2005).

46. "Under Ohio law, a medical monitoring prayer for relief is deemed injunctive when the court is involved in the administration of the medical monitoring program." *Hirsch v. CSX Transp., Inc.*, 2008 U.S. Dist. LEXIS 124211, at *25 (N.D. Ohio Oct. 22, 2008). Costs for complying with an injunction are properly considered for amount in controversy calculation purposes. *Pennsylvania R.R. Co. v. Girard*, 210 F.2d 437, 439 (6th Cir. 1954).

47. Plaintiffs also make a claim for attorneys' fees as part of the requested award. Since Plaintiffs do not provide a statutory basis for attorneys' fees in the complaint, they have been excluded from the amount in controversy calculations. *See Miller v. Volkswagen of Am.,*

14

*Inc.*, 889 F. Supp. 2d 980, 988 (N.D. Ohio 2012) (noting only statutory attorney fees are properly considered toward the jurisdictional minimum calculation).

**AMOUNT IN CONTROVERSY CALCULATIONS**

48. Utilizing the conservative estimates set forth above, the amount in controversy in this class action exceeds $9,199,371 ($3,066,457 in compensatory damages plus $6,132,914 in punitive damages). Therefore, by a preponderance of the evidence, the amount in controversy exceeds the $5,000,000 threshold for diversity jurisdiction under CAFA. *See* 28 U.S.C. § 1332(d).

49. Accordingly, in light of the amount in controversy and the fact that a member of each putative subclass of plaintiffs is a citizen of a state different from that of any defendant, this Court has diversity jurisdiction under CAFA, *see* 28 U.S.C. § 1332(d), and this action is properly removed to this Court pursuant to 28 U.S.C. §§ 1441, 1446, and 1453.

50. This Notice of Removal is being timely filed and served pursuant to 28 U.S.C. § 1446(b). At this time, neither NSC nor NSR has been served with the Summons or Complaint.

51. Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served by electronic mail and overnight delivery upon Plaintiffs' attorneys of record, and notice will be filed with the Clerk of the Court of Common Pleas of Columbiana County, Ohio.

52. By filing this Notice, Defendants do not waive and instead expressly reserve their right to raise any and all defenses and objections that may be available to them.

WHEREFORE, Defendants, Norfolk Southern Corporation and Norfolk Southern Railway Company, pray that the above-captioned action be removed from the Court of Common Pleas of Columbiana County, Ohio, to the United States District Court for the Northern District of Ohio.

    Respectfully submitted,

    DICKIE, McCAMEY & CHILCOTE, P.C.

    By: /s/Scott D. Clements
        J. Lawson Johnston, Esquire
        Scott D. Clements, Esquire

        Two PPG Place, Suite 400
        Pittsburgh, PA  15222
        (412) 281-7272

        Attorneys for Defendants,
        Norfolk Southern Corporation and
        Norfolk Southern Railway Company

**CERTIFICATE OF SERVICE**

I, Scott D. Clements, Esquire, hereby certify that on February 15, 2023 I served true and correct copies of the foregoing **Notice of Removal** and accompanying exhibits by electronic mail and FedEx overnight delivery on the following counsel of record:

James R. Wise, Esq.
Hartford & Wise Co., L.P.A.
91 W. Taggert Street
East Palestine, OH 44413

Patrick J. Perotti, Esq.
Nicole T. Fiorelli, Esq.
Frank A. Bartela, Esq.
Shmuel S. Kleinman, Esq.
Sworken & Bernstein Co., L.P.A.
60 South Park Place
Painesville, OH 44077

*Counsel for Plaintiffs*

DICKIE, McCAMEY & CHILCOTE, P.C.

By: /s/Scott D. Clements
Scott D. Clements, Esquire

15857602.2